[No. B066548. Second Dist., Div. Five. July 19, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN A. WILSON, Defendant and Appellant.

---

---

**COUNSEL**

Susan A. Nash, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Tricia A. Bigelow and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**ARMSTRONG, J.**—Defendant and appellant Steven A. Wilson was convicted by a jury of two counts of attempted voluntary manslaughter and two counts of assault with a firearm. As to each count, the jury found the allegation that appellant personally used a firearm within the meaning of Penal Code section 12022.2, subdivision (a) to be true. On this appeal, appellant challenges the admission of two police detectives' testimony concerning conversations with his wife, Helena Wilson, in which she related a conversation she had had with him. Appellant contends that the testimony was erroneously admitted as a declaration against penal interest. Alternatively, he contends that if Mrs. Wilson's statement satisfies the requirements of a declaration against penal interest, its admission denied him the right to confront a witness against him. (U.S. Const., 6th & 14th Amends.) We conclude that the statement was properly admitted and that there was no constitutional error.

In the early morning hours of August 15, 1991, one of the victims, Andres Oropeza, drove a truck to a market. With him were the second victim, Gustavo Ramirez Romero, and another person. While backing the truck into a parking space, Mr. Oropeza accidentally struck a red car in which appellant and several other men were sitting. Following an exchange of words, appellant and another occupant of the red car attacked the victims. The

victims fled in the truck, closely followed by appellant and another man in the red car. During the chase which ensued, appellant fired shots at the victims, several of which struck the truck. The chase ended at the dead end of Gear Street when the truck ran into a garage door and the red car ran into a concrete block wall next to the garage. Appellant, who had been driving, got out of the red car and fired two shots at the victims in the truck. One bullet passed through the driver's seat and hit Mr. Romero in the back.

Appellant and his companion fled on foot. Mr. Romero and Mr. Oropeza drove to their apartment on Carlin Street, a block away, and the police were called. Mr. Oropeza, in the meantime, got on top of the truck to look for bullet holes. While he was doing so, 14 or 15 more shots were fired. He ducked into the bed of the truck and was not injured. Three of the shots hit the truck and one shot hit a tire. Ten or twelve cars on the street were also hit. The shooter ran away and was not identified.

Later, two officers saw the red car driving in reverse without lights at a high rate of speed. The car did a three-point turn and proceeded down the street. It appeared to be having engine trouble. The officers stopped the car. Appellant was driving and he was taken into custody. No one else was in the car.

Appellant was taken to Carlin Street where Mr. Romero identified him as the man who had shot him. Mr. Romero also identified appellant at trial but failed to identify him at a lineup because he had short hair.[1] Mr. Oropeza was unable to identify appellant.

Over appellant's objection, Detectives Dale Turnly and Michael Whelan of the Los Angeles Police Department testified to several telephone conversations they had with Mrs. Wilson. She told the officers that appellant had called her from jail the day after his arrest, and "instructed her to take a gun which was in the bushes next to a tree in front of the residence; that he had used that gun to shoot the Mexicans, and to take that gun to his mother's house at 3851 Coco." Mrs. Wilson said that she did as she was told. She found the gun in the bushes and took it to appellant's mother's house and handed it to a man who came to the door. Mrs. Wilson asserted the marital privilege found in Evidence Code section 970 and refused to testify at trial.

The trial court admitted Mrs. Wilson's statement pursuant to Evidence Code section 1230, which provides: "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the

---

[1]On the day of the incident, appellant's hair was long, just a couple of inches off his shoulders. It was curly with "grease or something."

hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability, or so far tended to render invalid a claim by him against another, or created such a risk of making him an object of hatred, ridicule, or social disgrace in the community, that a reasonable man in his position would not have made the statement unless he believed it to be true."[2]

In deciding to admit the statement, the trial court concluded that "the statement that is made by Mrs. Wilson is a substantial risk to her. She is facing possible felony prosecution of accessory after the fact."

Penal Code section 32 defines an accessory as follows: "Every person who, after a felony has been committed, harbors, conceals, or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." ■ Knowledge that the principal committed a felony or has been charged with the commission of one is an essential element of accessory liability. (*People* v. *Duty* (1969) 269 Cal.App.2d 97, 100 [74 Cal.Rptr. 606].) Concealment of a weapon used by the principal in the commission of a felony may constitute the actus reus of the offense. (*People* v. *Gunn* (1987) 197 Cal.App.3d 408, 415 [242 Cal.Rptr. 834].)

■ Appellant, in reliance on *People* v. *Leach* (1975) 15 Cal.3d 419 [124 Cal.Rptr. 752, 541 P.2d 296], contends that "Because the bulk of Helena Wilson's conversations with the detectives concerned statements that were disserving to appellant, as opposed to statements against her own interests, the court erred in admitting the statements attributed to appellant." We disagree.

In the *Leach* case, Leach and Lorraine Kramer (with two others) were jointly tried for the murder of her father. Leach and Kramer made separate hearsay statements incriminating the other as well as themselves, which were introduced at trial under the declaration against penal interest exception. The Supreme Court held that the statements had been erroneously admitted saying: "In the absence of any legislative declaration to the contrary, we construe the exception to the hearsay rule relating to evidence of declarations against interest set forth in section 1230 of the Evidence Code to be

---

[2]The court after hearing testimony out of the presence of the jury determined that sufficient foundation had been laid to permit the issue of identity to go to the jury. The court also determined that Mrs. Wilson was unavailable within the meaning of section 1230. Appellant does not challenge these rulings.

inapplicable to evidence of any statement or portion of a statement not itself specifically disserving to the interests of the declarant." (15 Cal.3d at p. 441.) The justification for this doctrine is that a "declarant is in a trustworthy frame of mind when he makes a declaration against interest, . . . . But when a self-serving statement is made along with a disserving one, it may well be doubted that the declarant is in a trustworthy frame of mind when he makes the self-serving statement. . . . The basis of this exception is not that a declarant is in a general trustworthy frame of mind. The probability of trustworthiness comes from the facts asserted being disserving in character." (Jefferson, *Declarations Against Interest: An Exception to the Hearsay Rule* (1944) 58 Harv. L.Rev. 1, 59, quoted with approval in *Leach, supra,* 15 Cal.3d at pp. 439-440.) "The focus of the declaration against interest exception to the hearsay rule is the basic trustworthiness of the declaration." (*People* v. *Frierson* (1991) 53 Cal.3d 730, 745 [280 Cal.Rptr. 440, 808 P.2d 1197].)

Appellant argues that Mrs. Wilson's statement that he told her that the gun "he had used to shoot the Mexicans" was hidden in the bushes did not expose her to criminal liability and thus was not disserving to her.

Appellant's analysis is incorrect. Accessory liability attaches only to a person who acts with knowledge that a principal has committed or been charged with the commission of a felony. Mrs. Wilson's statement that her husband had told her he had used the gun to shoot the Mexicans is disserving to her because it establishes that she had knowledge that a felony had been committed. That knowledge, coupled with her statement that she concealed the gun, exposed her to criminal liability as an accessory. Mrs. Wilson was not an accomplice or coparticipant in appellant's crime and there is nothing in the statement which is self-serving or exculpatory to Mrs. Wilson. Since the statement is specifically disserving to Mrs. Wilson, it satisfies the trustworthiness requirements of Evidence Code section 1230 as interpreted by the Supreme Court in the *Leach* case. The fact that the statement is also disserving to appellant does not render the statement unreliable and inadmissible.

▉ "[T]he heart of the exception is the basic trustworthiness of the declaration, and that question is entrusted to the trial court's discretion. It follows that a determination whether the declaration is indeed against interest should itself be reviewed for abuse of discretion: that issue goes to the core of the question of basic trustworthiness, and hence must be deemed entrusted to the court's discretion." (*People* v. *Gordon* (1990) 50 Cal.3d 1223, 1252 [270 Cal.Rptr. 451, 792 P.2d 251].) ▉ Measured by the abuse of discretion standard, the court did not err in admitting the testimony.

In *People* v. *Coble* (1976) 65 Cal.App.3d 187 [135 Cal.Rptr. 199], relied upon by appellant, the court admitted into evidence a tape recording made by David Sifferman, "a possible coconspirator, accomplice, or aider and abetter," in a market robbery. In the statement, Sifferman said he drove Coble to a market where Coble got out, entered the store, came running out in a few minutes, and said: "Let's get the hell out of here. I just pulled a robbery." Sifferman's statement concluded with the words "I didn't do it. That's it." The court concluded as a matter of law "that the Sifferman statement, insofar as it implicated Coble, was not a statement against Sifferman's penal interest and therefore was not admissible in evidence against Coble under the provisions of Evidence Code section 1230." (*Id.* at p. 192.)

The court reasoned that because the statement was an exculpatory statement by a possible accomplice it lacked the required indicia of reliability required for the admission into evidence of such statements. The *Coble* case is consistent with the *Leach* case, but it is no help to appellant because, as discussed above, Mrs. Wilson was not involved in the crimes committed by appellant, her statement was not exculpatory in any part, and her statement, insofar as it implicated appellant, was also a statement against her penal interest.

Appellant also contends that even if Mrs. Wilson's statements were admissible as declarations against her penal interest, their admission violated his right to confront witnesses against him. We find no violation. When testimony, although hearsay, has "sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." (*White* v. *Illinois* (1992) 502 U.S. __ [116 L.Ed.2d 848, 859, 112 S.Ct. 736, 743]; *People* v. *Clark* (1992) 3 Cal.4th 41 [10 Cal.Rptr.2d 554, 833 P.2d 561].)

In *White*, the United States Supreme Court considered the admissiblity of the out-of-court statements of a child victim, made soon after the events in question to her mother, her baby sitter, and a police officer, and to doctors some hours later. Although emotional difficulties prevented the child from testifying in court, the trial court admitted the statements under hearsay exceptions for spontaneous declarations and for statements made in the course of securing medical treatment.

The Supreme Court found that admission of the statements did not violate the confrontation clause. The court acknowledged the importance of cross-examination, " 'the greatest legal engine ever invented for the discovery of truth.' " (*White* v. *Illinois, supra,* 502 U.S. at p. __ [116 L.Ed.2d 848, 859, 112 S.Ct. 736, 743] quoting *California* v. *Green* (1970) 399 U.S. 149, 158

[26 L.Ed.2d 489, 497, 90 S.Ct. 1930].) However, the court found that the child's statements had "substantial probative value," and that "[t]o exclude such probative statements under the strictures of the Confrontation Clause would be the height of wrong-headedness, given that the Confrontation Clause has as a basic purpose the promotion of the 'integrity of the fact finding process.' " (*Ibid.*, internal quotation marks omitted.) The court held that since the statements were sufficiently reliable to fall within hearsay exceptions which were firmly rooted in the law, the confrontation clause was satisfied. (*Ibid.*)

Similarly, in *People* v. *Clark, supra,* 3 Cal.4th 41, our Supreme Court found no violation of the confrontation clause when a medical examiner was permitted to testify about the findings of the original medical examiner on the case, since deceased. The court found that the evidence was properly admitted under Evidence Code section 1280, regarding public records. Citing *White*, the court also found that that firmly rooted exception to the hearsay rule "carries sufficient indicia of reliability to satisfy the requirements of the confrontation clause," and that there was no constitutional violation. (3 Cal.4th at p. 159.)

Evidence Code section 1230, the hearsay exception at issue here, is also firmly rooted in the law. (See 1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 688, p. 675, and sources cited therein.) The same facts that rendered Mrs. Wilson's statements admissible under our Evidence Code provide indicia of reliability sufficient to satisfy the confrontation clause, and under *White* and *Clark*, there was no violation of constitutional rights. As the United States Supreme Court has noted, hearsay rules and the confrontation clause are generally designed to protect similar values, and stem from the same roots. (*Bourjaily* v. *United States* (1987) 483 U.S. 171, 183 [97 L.Ed.2d 144, 157-158, 107 S.Ct. 2775].) It is thus not surprising that evidence admissible under the hearsay rules is free of confrontation clause error.

DISPOSITION

The judgment is affirmed.

Turner, P. J., and Grignon, J., concurred.

A petition for a rehearing was denied August 18, 1993, and appellant's petitions for review by the Supreme Court were denied October 14, 1993.