[No. E049827. Fourth Dist., Div. Two. Apr. 26, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND CHARLES MOOMEY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.B., C., and D.

852

COUNSEL

John G. Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Lynne McGinnis and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KING, J.—

## I. INTRODUCTION

This case arises from the burglary and theft of approximately $80 in groceries and cookware from a Stater Bros. grocery store. Defendant's girlfriend, Janna Lorette, was the alleged principal in the burglary. Defendant was charged with being an accessory after the fact pursuant to Penal Code section 32.[1] He was convicted of the charge by a jury and sentenced to two years in prison.

On appeal, defendant contends the evidence was insufficient to support his conviction. First, he contends there was no substantial evidence he knew that

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Lorette intended to steal when she entered the store. Second, he argues he cannot be convicted of being an accessory to a felony when there was no evidence that the underlying burglary was a *felony* burglary. Defendant further contends the jury instructions erroneously failed to clarify that defendant could not be convicted for merely helping the perpetrator after she committed theft; the court prejudicially erred in giving a flight instruction; and the cumulative effect of errors requires reversal. We reject these arguments and affirm the judgment. Finally, defendant contends, and the People agree, that the court erred in delegating the calculation of defendant's conduct credits to the Department of Corrections and Rehabilitation. The correct credit is six days. We will direct the court to amend the abstract of judgment accordingly.

## II. FACTUAL SUMMARY

During the afternoon of February 26, 2009, David Nelson, an assistant manager of a Stater Bros. grocery store, observed a woman leave the store without going through the checkout. The woman was carrying a large purse or bag that was bulging on one side. Within minutes, the woman walked back into the store carrying the same purse, which now appeared to be empty. A few minutes later, she left the store with her purse bulging again.

Nelson followed the woman into the parking lot. He saw her removing items from her purse and placing them into compartments in the back of a utility truck. Nelson approached her and asked if she had a receipt for the items. She said she did not. He asked her if she had any proof of payment. She refused to talk to him and moved away from the truck.

As Nelson began to retrieve the items from the truck, defendant approached. He was pushing a shopping cart with two children inside. There were no groceries in the cart.

Nelson asked defendant if the truck was his. Defendant said it was. Nelson told defendant he was retrieving items that were stolen from the store. Nelson asked defendant if he knew the woman who took the items, and defendant said he did. According to Nelson, defendant "seemed very surprised that she was shoplifting" and "was mad that she was doing that."[2] Defendant told Nelson, "I can't believe she did that."

Nelson told defendant the woman claimed " 'to not have any [identification] on her,' " and asked defendant if he would assist in getting her

---

[2] On cross-examination, Nelson was asked about his statement that defendant seemed surprised. Nelson then testified: "Well, I think I said that yesterday. But what I meant, that I was surprised he was angry. He said, 'I can't believe she did that.' And I was surprised that he was going to be cooperative and help me [by getting identification of the woman] . . . ."

identification. Defendant said he would, and told Nelson, " 'Just let me get the kids in the car, and I'll help you.' " Nelson removed the remaining stolen items from the truck as defendant put the children inside. Defendant then "jumped in the truck, started up, and started backing away."

It is not clear from our record where the woman went after she moved away from the truck. However, Nelson testified that the "suspects" (plural) drove away from the store, indicating that Lorette left the parking lot with defendant.

The truck did not have a rear license plate, but it did have the name of a contractor and a contractor's license number on the side of the truck. Nelson wrote down the information and called the police. Deputy Sheriff Ryan Cook responded. Nelson gave the truck's identifying information to Deputy Cook.

Nelson took the stolen items back into the store and created a register receipt of the 19 items, which described the items and calculated their value to be $79.94. The items included food and cookware.

The store has a video surveillance system that records movement within the store and in the parking lot. The system recorded the arrival of defendant and the woman, their entries and exits at the store, and their departures. The recording was copied to a DVD, which was shown to the jury. Photographs reproduced from the DVD were also introduced.

The DVD shows defendant and the woman pulling into the parking lot. Defendant entered the store first, with one or two children in his cart. Approximately 20 seconds later, the woman entered. The woman's purse appears to be empty. She left the store alone, approximately seven minutes after she entered. She reentered the store less than two minutes later. She left the store again, purse bulging, four minutes later. Defendant left the store approximately one minute after the woman left. Just before leaving the store, defendant took a bottle of water out of the grocery cart and placed it on a floral display near the door.

The recording does not show, and Nelson did not see, the woman and defendant together inside the store. Approximately 15 minutes elapsed between the time the woman entered the store the first time and the second time she left the store.

Approximately one week after the incident, Deputy Cook went to the house where defendant and Lorette lived. He met with defendant and Lorette and told them he was investigating a theft at Stater Bros. Defendant told Deputy Cook that Lorette was his girlfriend. Lorette introduced herself as

Jennifer Bryson and said she was defendant's girlfriend. Defendant and Lorette initially denied knowing anything about the incident at the store. After Deputy Cook informed them he had video evidence implicating them, defendant said to Lorette, " 'You know what happened. Let's be honest with this guy. He knows what the fuck happened. You know what happened, buddy' . . . ."

When Lorette continued to deny she was involved, defendant said he was with a woman named Lisa Pratt. Defendant explained that he was in the store buying a couple of wine glasses when "[s]omeone started chasing [Pratt] out [of] the store." He added: "I was in one of the [a]isles and I seen one of the guys chasing her outside so I went outside and she was all freaking out and I knew what she was doing then so . . . we jumped in the car and we left and that was that."

Deputy Cook asked defendant about the conversation with the store employee in the parking lot. Defendant initially denied any contact with anyone. Later, he admitted he told the employee that the woman "has an ID." When Deputy Cook asked, "Did he say anything like she's stealing stuff," defendant responded, "Well, yea[h], I knew she was stealing stuff[,] but he was taking shit out of my truck. . . . [¶] . . . [¶] I knew that then, yea[h]." When Deputy Cook suggested defendant was aware that the woman intended to steal when they went into the store, defendant responded, "I didn't know what was going on until I got to the truck and seen the guy taking stuff out of the truck."

Deputy Cook placed defendant under arrest, gave him the *Miranda*[3] warnings, and placed him in the backseat of the patrol car. Defendant agreed to talk to Deputy Cook. Deputy Cook asked defendant what happened. Defendant told Deputy Cook that "Lisa" called "Jennifer" to ask if defendant could drive her to the grocery store. Defendant then picked up Lisa, took her to the store, and waited in the car while she went inside. When she came back out, employees were chasing her. An employee confronted Lisa and said she stole things. Defendant told Deputy Cook he did not know Lisa was stealing until he heard the employee make the accusation. He said they got into the car and left. Defendant said he left because his daughter was in the car and he did not want her to be involved.

Deputy· Cook left defendant in the patrol car and walked back to talk to Lorette (who Deputy Cook still believed was Jennifer Bryson). Lorette could not provide any information to Deputy Cook about Lisa Pratt.

Deputy Cook returned to the patrol car and looked at the surveillance photographs from the store. Defendant, looking over Deputy Cook's shoulder,

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

told him, " 'Look at the photograph hard.' " Deputy Cook then asked defendant for his girlfriend's name. Defendant told him it was Janna Lorette. Deputy Cook asked him if she was with him at the grocery store, and defendant said she was. Deputy Cook arrested Lorette, who then revealed her true identity.

## III. ANALYSIS

### A. *Sufficiency of the Evidence*

Defendant was convicted of being an accessory after the fact in violation of section 32. This statute provides: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."

■ "The crime of accessory consists of the following elements: (1) someone other than the accused, that is, a principal, must have committed a specific, completed felony; (2) the accused must have harbored, concealed, or aided the principal; (3) with knowledge that the principal committed the felony or has been charged or convicted of the felony; and (4) with the intent that the principal avoid or escape from arrest, trial, conviction, or punishment." (*People v. Plengsangtip* (2007) 148 Cal.App.4th 825, 836 [56 Cal.Rptr.3d 165] [Fourth Dist., Div. Two].) Defendant contends the evidence was insufficient to establish the first and third of these elements.

Regarding the first element, defendant contends there is no evidence that another person committed a felony. The alleged felony committed by another in this case is burglary, committed by Lorette.[4] Defendant asserts, and the People do not dispute, that if Lorette committed a burglary of the Stater Bros. store, it was burglary in the second degree. (See § 460.) He points out that second degree burglary is a "wobbler," and may be punished as either a misdemeanor or a felony. (§§ 17, 460, 461.) He then argues there was no evidence that Lorette's burglary was a felony, not a misdemeanor. We reject the argument.

■ Second degree burglary is punishable "by imprisonment in the county jail not exceeding one year or in the state prison." (§ 461, subd. (b).)

---

[4] The crime to which defendant could have been an accessory could not have been theft. The parties agree that the alleged theft in this case—of less than $80 worth of groceries—was petty theft. The crime of accessory can be committed only when the principal commits a felony. (§ 32.) Petty theft is a misdemeanor. (§§ 17, subd. (a), 490.) Therefore, defendant could not have been an accessory to the crime of theft in this case.

According to section 17, subdivision (b), "[w]hen a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] . . . After a judgment imposing a punishment other than imprisonment in the state prison. . . ."[5] Defendant is thus correct that second degree burglary is a "wobbler"; that is, a crime that may be punished as either a felony or a misdemeanor. (*People v. Williams* (2010) 49 Cal.4th 405, 461, fn. 6 [111 Cal.Rptr.3d 589, 233 P.3d 1000]; *People v. Rose* (1997) 56 Cal.App.4th 990, 993 [65 Cal.Rptr.2d 887].)

Our state Supreme Court, interpreting a prior (but for our purposes substantially identical) version of section 17, stated: "[T]he proper interpretation of section 17 as applied to a crime which is punishable either as felony or as misdemeanor [is]: 'the charge stands as a felony for every purpose up to judgment, and if the judgment be felonious in that event it is a felony after as well as before judgment; but if the judgment is for a misdemeanor it is deemed a misdemeanor for all purposes thereafter—the judgment not to have a retroactive effect . . .' [citation]." (*People v. Banks* (1959) 53 Cal.2d 370, 381–382 [1 Cal.Rptr. 669, 348 P.2d 102].) The court recently reaffirmed this view in *People v. Feyrer* (2010) 48 Cal.4th 426 [106 Cal.Rptr.3d 518, 226 P.3d 998]: "When a defendant is convicted (whether by a guilty plea or a no contest plea, or at a trial) of a wobbler offense, . . . his or her offense is '*deemed* a felony' unless subsequently 'reduced to a misdemeanor by the sentencing court' pursuant to section 17, subdivision (b). [Citations.] [¶] . . . If ultimately a misdemeanor sentence is imposed, the offense is a misdemeanor from that point on, but not retroactively . . . ." (*Id.* at pp. 438–439; see also *People v. Martinez* (1998) 62 Cal.App.4th 1454, 1464 [73 Cal.Rptr.2d 358] [a wobbler offense remains a felony except when the discretion is actually exercised and the prisoner is punished only by a fine or imprisonment in a county jail].) If no sentence is ever pronounced, the offense remains a felony. (*In re Anderson* (1968) 69 Cal.2d 613, 664 [73 Cal.Rptr. 21, 447 P.2d 117].)

■ It is clear from these authorities that the commission of a wobbler is a felony at the time it is committed and remains a felony unless and until the principal is convicted and sentenced to something less than imprisonment in state prison (or the crime is otherwise characterized as a misdemeanor). Even if the perpetrator was subsequently convicted and given a misdemeanor sentence, the misdemeanant status would not be given retroactive effect. (*People v. Banks, supra*, 53 Cal.2d at pp. 381–382; *People v. Feyrer, supra*, 48 Cal.4th at p. 439.)

---

[5] There are other circumstances specified for characterizing a crime as a misdemeanor, but they are not relevant here. (See § 17, subd. (b)(2)–(5).)

Here, the acts that constituted the actus reus of defendant's crime (the harboring, concealing, or aiding of Lorette) indisputably took place before the principal, Lorette, was sentenced for any crime. Therefore, if Lorette committed a burglary, the burglary was necessarily a *felony* burglary at all relevant times. Thus, if the evidence is sufficient to support the jury's finding that Lorette committed second degree burglary, the evidence is sufficient to establish that the crime she committed was a felony for purposes of defendant's accessory liability. (See *People v. McLaughlin* (1952) 111 Cal.App.2d 781, 792 [245 P.2d 1076].)

Regarding the third element of being an accessory, defendant contends the evidence is insufficient to support the finding that he knew Lorette had committed burglary. In particular, he argues there is no substantial evidence that he was aware Lorette had the intent to steal at the time she entered the store. (See § 459 [burglary is committed when a person enters certain specified places, including a shop, "with intent to commit grand or petit larceny or any felony"].) We disagree.

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].)

■ "Knowledge that the principal committed a felony or has been charged with the commission of one is an essential element of accessory liability." (*People v. Wilson* (1993) 17 Cal.App.4th 271, 275 [21 Cal.Rptr.2d 420].) In determining whether the alleged accessory had such knowledge, "the jury may consider such factors as his possible presence at the crime or other means of knowledge of its commission, as well as his companionship and relationship with the principal before and after the offense." (*People v. Duty* (1969) 269 Cal.App.2d 97, 104 [74 Cal.Rptr. 606]; accord, *People v. Plengsangtip, supra*, 148 Cal.App.4th at p. 837.)

Lorette entered the grocery store with a large empty purse, and left within minutes with the purse full of stolen goods. This is circumstantial evidence of Lorette's intent to steal when she first entered the store. (See, e.g., *In re Matthew A.* (2008) 165 Cal.App.4th 537, 541 [81 Cal.Rptr.3d 119] [evidence of theft following entry may create a reasonable inference that the intent to

steal existed at time of entry].) Even defendant does not dispute that Lorette had the requisite intent for burglary no later than when she entered the store the second time.

■ Lorette was defendant's girlfriend. They went to the store together in defendant's truck. Lorette left the store to unpack her first load of stolen merchandise, then returned to fill her purse a second time. Meanwhile, defendant pushed a shopping cart around the store without any apparent intent to purchase anything. Their relationship, their simultaneous presence in the store, and the apparent lack of a legitimate purpose for defendant's activity inside the store strongly suggest that defendant was aware of Lorette's intent. The fact that defendant stayed inside the store while Lorette made her trip to the truck and back indicates he knew she would be returning. Although it is possible he did not know she left the first time, this possibility is made less likely by the fact that he exited the store approximately one minute after Lorette left the store the second time; this indicates that defendant was keeping an eye on Lorette and knew when she left the building. Finally, even if defendant was not aware of Lorette's intent to steal before he walked out of the store, defendant was told by the assistant store manager that Lorette stole from the store. Just as a jury could reasonably infer from the circumstances surrounding the entry and theft that Lorette had the intent to steal when she entered the store, the jury could also reasonably conclude that defendant drew the same inference. Although the evidence of Lorette's intent and defendant's knowledge is circumstantial, the cumulative evidence, viewed in its entirety, is sufficient to support a reasonable inference that defendant was aware of Lorette's intent to steal either from the time she first entered the store or when she reentered. We therefore reject defendant's substantial evidence arguments.

B.–D.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV.  DISPOSITION

The trial court is directed to modify the judgment to provide for six days of local conduct credits in addition to the six days of actual local time served (for a combined total of 12 days of credit). The trial court is further directed to prepare an amended abstract of judgment to reflect that defendant shall receive six days of actual local time served plus six days of local conduct credits. The trial court is directed to forward copies of the minute order reflecting the court's modification of the judgment and the amended abstract

---

[*]See footnote, *ante*, page 850.

of judgment to the Department of Corrections and Rehabilitation. In all other respects the judgment is affirmed.

Hollenhorst, Acting P. J., and Miller, J., concurred.