Filed 6/27/25  P. v. Martinez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARK MARTINEZ,<br><br>    Defendant and Appellant. | D083984<br><br><br>(Super. Ct. No. SCD299378) |

APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Emily Reeves, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Mark Martinez of being an accessory after the fact in violation of Penal Code section 32 and the trial court sentenced Martinez to

three years in state prison.[1]  The conviction arose after Martinez helped an associate, who shot a police officer, escape apprehension.  On appeal, Martinez argues reversal is required because there was no evidence he knew the associate had committed a felony.  We reject this argument and affirm the conviction.

FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2023 around 11:00 a.m., San Diego Police Officer James Romero was on duty in a high-crime area when he noticed a white pickup truck that looked suspicious.  Romero began following the truck in his patrol car and looked up the license plate in law enforcement databases.  Romero discovered the truck was stolen and relayed this information to police dispatch, which sent additional police units towards Romero.  Romero continued to follow the stolen truck, but did not initiate a traffic stop right away to allow time for additional police to get closer.

Romero eventually turned on his patrol car's lights to initiate a stop.  He saw the driver "fidgeting in the car," and thought the driver might be having car trouble.  The driver then abruptly jumped out of the car and began running while the abandoned truck rolled into another car.  Romero stopped his car, jumped out, and began pursuing the driver on foot.  As Romero pursued the driver into a walkway between buildings, the driver fired a gunshot at Romero, hitting him in the right arm.  Romero testified the shot was fired from an alley.  Romero took cover under a nearby stairwell and then heard a second gunshot.  He applied a tourniquet to his arm and began to retreat back to his patrol car.

Around the same time, a witness, Jamie M., was walking from her home to her car, which was parked in the alley, to leave for work.  Jamie

---

[1]     Subsequent undesignated statutory references are to the Penal Code.

noticed a black four-door, flat-back Honda driving east slowly through the alley toward its dead-end. Jamie got into her car and then saw the Honda turn around and drive west past Jamie towards the alley's exit. Jamie described the driver as a Hispanic man in his 20s with dark hair above his shoulders. The Honda remained parked at the end of the alley, blocking traffic, including Jamie, from exiting the alley to the street.

Jamie continued to watch the Honda, waiting for it to clear so she could leave, and then heard the first gunshot. Jamie saw a man run out from a building in her rearview mirror. She described the man as medium build, five-eight or nine, and light-skinned Hispanic or white. She said he was carrying a blue reusable Wal-Mart bag, and holding a black handgun with a square barrel. Jamie then saw the man fire a second shot, and watched him run towards the exit of the alley. Another neighbor came out of her garage and Jamie looked to the neighbor to see if she was injured. When Jamie looked back to see where the shooter was, both the shooter and the black Honda were gone. During her testimony, Jamie identified Martinez as the driver of the Honda.[2]

Thereafter, investigators determined the white truck had been reported stolen two days before the shooting. After the shooting, the police processed the truck for fingerprints to try to identify the driver. Martinez's palm print and the fingerprints of J.C. Sartor were found on a box in the truck. Investigators also recovered surveillance videos from several nearby

---

[2]    At the preliminary hearing, Jamie testified that she did not recognize Martinez as the driver. However, after that testimony she spoke with the District Attorney's investigator and confessed that she did not identify Martinez because she feared for her safety and the safety of her family. She told the investigator she "was 100 percent sure that [Martinez] was the guy she saw in the car, but she was too scared to admit it."

residences and businesses. The videos showed the black Honda driving in front of the stolen truck before Romero attempted to stop the truck. Another surveillance video showed the black Honda and the truck both driving eastbound on University Avenue. Before the shooting, the video surveillance showed the white truck and patrol car turning left onto Wightman. Around 11:09 a.m., video surveillance captured gun shots, followed shortly after by the black Honda driving through a stop sign and speeding away from the scene of the shooting.

After investigators identified Sartor as the suspect in the shooting, they identified a phone number that belonged to Sartor's previous girlfriend. This led investigators to a house on Livingston Street, where they conducted surveillance over two days. On June 13, 2023, investigators stopped a car Martinez was riding in leaving the Livingston Street house. The investigators arrested Martinez and obtained a warrant to search his cell phone. This search revealed an address in Kearny Mesa where Sartor had been located and arrested.

A subsequent analysis of phone records from Sartor and Martinez's cell phones revealed they communicated with each other over 121 times between June 7, 2023, and June 10, 2023. The communications included completed calls, text messages, and attempted calls that went to voicemail. On June 7, 2023, Sartor and Martinez communicated 61 times. On June 8, 2023, the day of the shooting, they communicated 40 times. On June 9, 2023, they communicated 14 times and on June 10, 2023, the day of Sartor's arrest, they communicated 6 times.

Shortly before the shooting, between 8:00 a.m. and 11:00 a.m., Sartor called Martinez three times and Martinez called Sartor once. The cell phone towers that their phones connected to indicated Sartor and Martinez were in

4

the same general location during this time.  Between 10:50 a.m. and 11:04 a.m., which was approximately five minutes before the shooting, their phones showed that they were in the same general location in City Heights.  In this 14-minute window of time, Sartor called Martinez three times and Martinez called Sartor twice.  Both phones were connected to cell phone towers in the same general area where the shooting occurred.

Further, Sartor had a 4 minute and 15 second phone call with Martinez "that started at 11:05:17 ... and ... ended at 11:09:32."  This call began around the time Officer Romero started following Sartor.  The shooting occurred at approximately 11:09 a.m., around the time the phone call ended.  The phones continued to be connected to cell phone towers in the area of the shooting.  Cell phone tower data also showed that both phones were connecting to the same cell phone tower at 11:24 a.m., indicating the two men remained in the same area.

After his arrest, Martinez was charged with being an accessory after the fact.  At the conclusion of trial, the jury found Martinez guilty and the trial court sentenced him to three years in state prison.  Martinez timely appealed from the judgment of conviction.

## DISCUSSION

Martinez's sole contention on appeal is that insufficient evidence supported the jury's finding that he knew Sartor had committed a felony.

## I

### *Legal Standards*

When we consider a claim of insufficiency of the evidence to support a conviction we apply the familiar substantial evidence standard of review.  Under that standard we review the entire record, drawing all reasonable inferences in favor of the jury's findings.  We do not make credibility

decisions nor do we reweigh the evidence. We determine whether there is sufficient substantial evidence in the record from which a rational jury could have found the elements of each offense were proved beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We apply the same standard of review whether the evidence is direct or circumstantial. (*People v. Stanley* (1995) 10 Cal.4th 764, 792.)

The crime of accessory after the fact is defined in section 32, which provides: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." Thus, the elements of the crime are: (1) someone other than the defendant committed a specific, completed felony; (2) the defendant harbored, aided or abetted the principal; (3) the defendant had knowledge that the principal had committed a felony, or was charged or convicted of a felony; and (4) the defendant harbored, concealed, or aided the principal with the specific intent that she avoid or escape from arrest, trial, conviction or punishment. (*People v. Nuckles* (2013) 56 Cal.4th 601, 607.)

II

*Analysis*

Martinez argues there is insufficient evidence to support the finding that he aided Sartor with knowledge that he committed a felony. As discussed, to be convicted of accessory after the fact, the prosecution must show the defendant had "[k]nowledge that the principle committed a felony or has been charged with the commission of one." (*People v. Wilson* (1993) 17 Cal.App.4th 271, 275.) "In determining whether the alleged accessory had

6

such knowledge, 'the jury may consider such factors as his possible presence at the crime or other means of knowledge of its commission, as well as his companionship and relationship with the principal before and after the offense.' " (*People v. Moomey* (2011) 194 Cal.App.4th 850, 858 (*Moomey*).) In this case, the jurors were instructed on the underlying felonies of assault with a firearm and vehicle theft.

" 'Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055.) Here, the circumstantial evidence presented to the jury concerning Martinez's conduct before and after the shooting, and his contact with Sartor in the days surrounding the shooting, constituted substantial evidence that Martinez knew Sartor had committed a felony when he picked him up after the shooting. Specifically, the evidence showed Martinez was driving in front of Sartor at the time Romero turned on his lights and pursued Sartor in the stolen truck. Sartor then called Martinez while Romero pursued Sartor, and the phone call lasted until 11:09 a.m., the approximate time of the shooting. The phone records also showed Martinez and Sartor were in the same area of the shooting at that time. After the shooting, at around 11:24 a.m., the cell phone tower records showed Sartor and Martinez continued to be in the same area.

In addition, an eyewitness saw Martinez driving the black Honda and waiting at the end of the alley where Sartor fled after the shooting. Although the eyewitness did not see Sartor get inside the Honda, when she looked back, both Sartor and the Honda were gone, strongly suggesting Martinez picked up Sartor. The Honda was then seen speeding through stop signs in an attempt to flee the scene. Critically, the evidence showed Martinez and

7

Sartor communicated over 100 times in the days surrounding the felonies at issue, including a phone call that ended almost simultaneously with the first gunshot. Further, when Martinez was arrested, officers found in Martinez's phone the address of the empty apartment where Sartor was hiding after the shooting. Finally, Martinez's fingerprints were on a box located in the stolen vehicle Sartor was driving. There is no question this evidence was sufficient to support the jury's finding that Martinez had knowledge of the felony shooting.

Though perhaps not as strong, circumstantial evidence also supported a finding that Martinez knew Sartor committed vehicle theft. The white truck was reported stolen two days before the shooting and, as discussed, Martinez and Sartor were in very close contact from June 7, 2023 until Sartor's arrest on June 10, 2023. Further, the handprints and fingerprints found on the box in the truck, and the fact that Martinez was driving alongside Sartor just before the shooting, supported this finding. Given these facts, it was reasonable for the jury to infer Martinez knew Sartor committed vehicle theft. Simply because the jury could have reached a different conclusion does not mean insufficient evidence supported the conviction. (See *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact."].)

Although the evidence supporting the element of Martinez's knowledge is circumstantial, "the cumulative evidence, viewed in its entirety, is sufficient to support a reasonable inference" that Martinez helped Sartor flee the scene of the shooting knowing Sartor had committed a felony. (*Moomey,*

*supra*, 194 Cal.App.4th at p. 859.)  Accordingly, substantial evidence supports Martinez's conviction.

DISPOSITION

The judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


RUBIN, J.