[Crim. No. 2594. Fifth Dist. Dec. 22, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY ARVAL COBLE, Defendant and Appellant.

**COUNSEL**

William R. Linehan, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel Carey and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LORING, J.\*—**Gary Arval Coble ("Coble") was convicted by a jury of armed robbery (Pen. Code, §§ 211 and 12022)[1] after a trial in which the court received in evidence a four-minute tape recording of a "statement"[2] by David Sifferman, a possible coconspirator, accomplice or aider and abetter. Although physically present at trial, Sifferman invoked his Fifth Amendment Constitutional right against self-incrimination, and refused to testify. The court concluded that therefore Sifferman was "unavailable" as a witness and admitted the tape recorded statement under authority of Evidence Code section 1230 as a statement against penal interest. In the statement, Sifferman told Deputy Sheriff Congdon while under arrest at the sheriff's station approximately one to two hours after the robbery that he had driven Coble to the 7-Eleven Store where the robbery occurred, and before they left to go to the store, he (Sifferman) knew that Coble had a gun in his possession; that although there had been some talk about "pulling a robbery," it really wasn't serious talk, only "bull shit," that after they drove up in front of the 7-Eleven Store, Coble got out of the car, entered the store and came running out in a few minutes stating "let's get the hell out of here, I just pulled a robbery." In the statement Sifferman also said that he then drove Coble to meet "Rick" at a motel where Coble exhibited a wad of money aggregating $110 and stated to Rick "Man, we just went out and pulled a fucking armed robbery, man." Coble then said that he was going out and buy an $80 bag of heroin. Sifferman admitted that he thereafter received $10 from the stolen money and that he and Coble traded T-shirts so Coble wouldn't be identified by the victim because his T-shirt had a replica of Mickey Mouse on it.

---

\*Assigned by the Chairman of the Judicial Council.

[1]The court on motion of the district attorney subsequently dismissed the charge that Coble was armed.

[2]We use "statement" because it was more than an admission, but perhaps somewhat short of a confession.

Sifferman's statement included exculpatory declarations that before they went on the ride, he did not know that Coble was going to pull a robbery, and concluded with a declaration "I didn't do it. That's it."

## ISSUES

Coble assigns the admission of Sifferman's tape recorded statement as reversible error since its admission allegedly violated his constitutional right to confront the witnesses against him. (U.S. Const., Amends. VI and XIV.) Sifferman apparently refused to testify even after a grant of immunity from the prosecution for the 7-Eleven Store robbery because he was then facing a parole violation hearing on a prior offense. Coble contends that Sifferman was legally "available" as a witness since the district attorney could have granted Sifferman immunity for the prior parole violation as well as immunity from prosecution for the robbery of the 7-Eleven Store.

## DISCUSSION

Both sides argue at length over whether the statement of Sifferman was inculpatory or exculpatory. We conclude that the statement was both inculpatory and exculpatory. It is manifest that in the statement, Sifferman was attempting to play down the role that he had in the robbery and to emphasize the role of Coble. As is not unusual when thieves fall out, Sifferman was trying to fasten guilt on Coble while keeping his own skirts as clean as possible. The motivation was exculpatory but the result was inculpatory.

However, we conclude that the admissibility of the evidence against Coble cannot be determined merely by a resolution of the question of whether Sifferman's statement was inculpatory or exculpatory.

We conclude that because of the exculpatory character of the statement, it does not satisfy the requirements of Evidence Code section 1230 and the statement therefore is not admissible as a declaration against penal interest and that, in any event, even if it did satisfy the requirements of Evidence Code section 1230, its admission violates defendant's right of confrontation guaranteed to him by the Sixth and Fourteenth Amendments to the federal Constitution. (*People* v. *Leach* (1975) 15 Cal.3d 419 [124 Cal.Rptr. 752, 541 P.2d 296]; *Bruton* v. *United*

*States* (1968) 391 U.S. 123 [20 L.Ed.2d 347, 88 S.Ct. 1620]; *Nelson* v. *O'Neill* (1971) 402 U.S. 622 [29 L.Ed.2d 222, 91 S.Ct. 1723].)

In *Leach, supra,* the California Supreme Court held that it was error (but not prejudicial error) to receive in evidence the confession of a coconspirator which implicated the defendant which was made after the object of the conspiracy had been attained. The court specifically concluded that such extra-judicial statement was inadmissible notwith-standing Evidence Code section 1230 (see pp. 441-442, fn. 17).

In *Leach,* the court said: "In the absence of any legislative declaration to the contrary, we construe the exception to the hearsay rule relating to evidence of declarations against interest set forth in section 1230 of the Evidence Code to be inapplicable to evidence of any statement or portion of a statement not itself specifically disserving to the interests of the declarant. . . ." (*Id.,* at p. 441.)

If we read this sentence correctly the Supreme Court has there stated in effect that the trial judge here should have deleted all portions of the Sifferman statement which related to Coble. It is difficult to see how the remainder of the Sifferman statement would have been relevant to any issue since Sifferman had not been charged with any crime. We conclude, as a matter of law, that the Sifferman statement, insofar as it implicated Coble, was not a statement against Sifferman's penal interest and therefore was not admissible in evidence against Coble under the provisions of Evidence Code section 1230. ▮ As this court said in *People* v. *Shipe* (1975) 49 Cal.App.3d 343 at page 354 [122 Cal.Rptr. 701]: ". . . to satisfy the requirements of section 1230 of the Evidence Code and the confrontation clause of the United States Constitution, a declaration against penal interest must be 'distinctly' against the declarant's penal interest (*People* v. *Traylor,* 23 Cal.App.3d 323, 331 [100 Cal.Rptr. 116]) and must be clothed with indicia of reliability; such indicia of reliability are lacking where the declaration is made to authorities after the declarant has been arrested and charged with a serious offense or after he *had* pled guilty to a lesser offense and is awaiting sentencing and where, as here, the statement is exculpatory in the sense that the declarant has blamed a coparticipant for the commission of the greater offense while admitting complicity to some lesser degree." (Italics added.)

We are unable to distinguish the case at bar from *Leach, supra,* or *Shipe, supra.* In *Bruton, supra,* 391 U.S. 123 the Supreme Court likewise concluded that the admission of the extra-judicial confession of a codefendant implicating the defendant violated the defendant's Sixth and Fourteenth Amendments right of confrontation notwithstanding the fact that the court gave limiting instructions. ██ We recognize that in *Bruton* and *Leach* the extra-judicial statement was made by a codefendant whereas in the case at bar Sifferman was an uncharged accomplice. We regard this as merely a distinction without legal difference.

██ Even if the Sifferman statement were admissible under Evidence Code section 1230 notwithstanding *Leach* we would still be forced to the conclusion that its admission would violate Coble's Sixth Amendment rights.

Respondent relies upon *Dutton* v. *Evans* (1970) 400 U.S. 74 [27 L.Ed.2d 213, 91 S.Ct. 210] to which we now address ourselves. We recognize preliminarily that a hearsay statement which subjects the declarant "to the risk of . . . criminal liability" may for that reason well be presumed to be true because "a reasonable man in his position would not have made the statement unless he believed it to be true." (Evid. Code, § 1230.) But, the fact that a statement is true does not satisfy the constitutional requirement of confrontation and the right of cross-examination. Truth is only one·element of a witness's testimony. Every witness takes an oath to tell not only the truth, but the *whole* truth and *nothing* but the truth. The great value of cross-examination is that it affords an opportunity for the trier of fact to determine not only that the witness has testified truthfully, but that he has told the whole story and that he has not included anything which is untrue. Experience teaches every trial judge and trial lawyer that the addition of one omitted fact may well change the complexion of the entire story or the exclusion of one included fact which is untrue or partially misrepresented may likewise change the complexion of the entire story. The *whole* truth is sometimes critically different from a *partial* truth. The fact that an extra-judicial statement may be given under circumstances (such as being against penal interests) which make it probable that it is true does not for that reason automatically satisfy the constitutional right of confrontation. Only cross-examination can establish whether a true statement which satisfies the requirements of Evidence Code section 1230 is the *whole* truth and *nothing* but the truth. That, we believe, is the rationale behind the Sixth Amendment.

At first reading *Dutton* would appear to be inconsistent with *Bruton.* In *Dutton* the court approved the admission in evidence of an extra-judicial statement by defendant's coconspirator to the effect that we wouldn't be in this now if it had not been for the defendant.[3] The court held the statement to be admissible under a Georgia state statute which permitted in evidence testimony relating to the declarations of a coconspirator made during the concealment phase of the conspiracy as an exception to the hearsay rule. Shaw testified to a statement by Williams which implicated Evans. It is significant, however, that the court did not overrule *Bruton.* After discussing *Bruton,* the court said:

"It seems apparent that the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots. *But this Court has never equated the two, and we decline to do so now.* We confine ourselves, instead, to deciding the case before us.

"This case does not involve evidence in any sense 'crucial' or 'devastating,' as did all the cases just discussed. It does not involve the use, or misuse, of a confession made in the coercive atmosphere of official interrogation, as did *Douglas, Brookhart, Bruton,* and *Roberts.* It does not involve any suggestion of prosecutorial misconduct or even negligence, as did *Pointer, Douglas,* and *Barber.* It does not involve the use by the prosecution of a paper transcript, as did *Pointer, Brookhart* and *Barber.* It does not involve a joint trial, as did *Bruton* and *Roberts.* And it certainly does not involve the wholesale denial of cross-examination, as did *Brookhart.*

". . . The Georgia statute can obviously have many applications consistent with the Confrontation Clause, and we conclude that its application in the circumstances of this case did not violate the Constitution." (Italics ours.) (*Dutton* v. *Evans, supra,* 400 U.S. at pp. 86-88 [27 L.Ed.2d at pp. 225-226].)

In *Dutton* the court also said: "It is not argued, nor could it be, that the constitutional right to confrontation requires that no hearsay evidence can ever be introduced. In the *Pointer* case itself, we referred to the decisions of this Court that have approved the admission of hearsay: " 'This Court has recognized the admissibility against an accused of dying declarations, *Mattox* v. *United States,* 146 U.S. 140, 151, and of

---

[3]The actual statement was "If it hadn't been for that dirty son-of-a-bitch, Alex Evans [the defendant] we wouldn't be in this now."

testimony of a deceased witness who has testified at a former trial, *Mattox* v. *United States,* 156 U.S. 237, 240-244. See also *Dowdell* v. *United States, supra,* 221 U.S. [325], at 330; *Kirby* v. *United States, supra,* 174 U.S. [47], at 61. . . . There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses.' " *(Dutton* v. *Evans, supra,* 400 U.S. at p. 80 [27 L.Ed.2d at p. 222].)

As Justice Harlan points out in a concurring opinion, the confrontation clause carried to its ultimate extreme would require exclusion of ordinary business and hospital records which are routinely accepted in evidence to establish "collateral" facts without violating the confrontation clause. *(Dowdell* v. *United States* (1911) 221 U.S. 325 [55 L.Ed. 753, 31 S.Ct. 590].) Or we might add, carried to its ultimate extreme the confrontation clause would preclude the court from taking mandatory judicial notice of unquestioned facts and even would prohibit the introduction of official records. The answer is that such an interpretation would be absurd. The Constitution is not an absurd document and therefore should not be interpreted so as to produce an absurd result. *Dutton* and *Bruton* combined produce a rule of reason. █ If the extra-judicial statement is of minor importance or on a collateral issue and it satisfies the requirements of hearsay exceptions established by the rules of evidence, it is admissible, but if the extra-judicial statement goes to the heart of the case, if it is "crucial" or "devastating" to the defendant, then it cannot be admitted unless the defendant's constitutional right of confrontation is satisfied. We think this rationale is made clear by the following statement in Justice Harlan's concurring opinion: "A rule requiring production of available witnesses would significantly curtail development of the law of evidence to eliminate the necessity for production of declarants where production would be unduly inconvenient and of small utility to a defendant. Examples which come to mind are the Business Records Act, 28 U.S.C. §§ 1732-1733, and the exceptions to the hearsay rule for official statements, learned treatises, and trade reports. See, *e.g.,* Uniform Rules of Evidence 63 (15), 63(30), 63,(31); *Gilstrap* v. *United States,* 389 F.2d 6 (5th Cir. 1968) (business records); *Kay* v. *United States,* 255 F.2d 476 (4th Cir. 1958) (laboratory analysis). If the hearsay exception involved in a given case is such as to commend itself to reasonable men, production of the declarant is likely to be difficult, unavailing, or pointless. In unusual cases, of which the case at hand may be an example, the Sixth Amendment guarantees federal defendants the right of compulsory process to obtain the presence of witnesses, and in

*Washington* v. *Texas,* 388 U.S. 14 (1967), this Court held that the Fourteenth Amendment extends the same protection to state defendants." (*Dutton* v. *Evans, supra,* 400 U.S. at pp. 95-96 [27 L.Ed.2d at pp. 230-231].)

In *Dutton,* the prosecution's case included the testimony of 20 witnesses who were subjected to rigorous cross-examination and the hearsay declaration in question was cryptic, insignificant and merely incidental to the whole case. The Supreme Court recognized, and properly so, that the confrontation clause of the Sixth Amendment was not intended to exclude and did not exclude all hearsay evidence merely because it was extra-judicial. ██ In the case at bar, the statement of Sifferman was in great detail, broad in scope and complete and all encompassing. But for Penal Code section 1111,[4] if the Sifferman statement were admissible in evidence and if it were the only evidence in the case connecting Coble with the crime, it, and it alone, would have been sufficient to sustain a conviction. In those jurisdictions without a statute comparable to Penal Code section 1111, if the Sifferman statement were the only evidence in the case connecting Coble with the crime we have no doubt that the United States Supreme Court would conclude that Coble's constitutional right of confrontation had been violated notwithstanding *Dutton* v. *Evans, supra.*[5] (See *Pointer* v. *Texas* (1965) 380 U.S. 400, 403 [13 L.Ed.2d 923, 925-926, 85 S.Ct. 1065, 1068].) ██ We think that one ultimate test is whether or not the right of cross-examination would serve any useful purpose. If not, then the denial thereof is not a denial of the constitutional right of confrontation. This interpretation is obviously a rule of reason. ██ In the case at bar the right of cross-examination would obviously serve a useful purpose.

Fortunately, in this case, we are not required to draw a precise line between what extra-judicial declaration is generally admissible and what

[4]Penal Code section 1111 reads:

"A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

"An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.".

[5]We note that *Dutton* v. *Evans, supra,* was decided on December 15, 1970. On June 1, 1971, the Supreme Court decided *Nelson* v. *O'Neil, supra,* 402 U.S. 622 in which it reaffirmed *Bruton,* but held it was not applicable since the author of the extra-judicial declaration was actually a witness at trial subject to cross-examination.

extra-judicial declaration is generally inadmissible. We conclude that they are not all either admissible or inadmissible. Some are and some are not. The line between the two will probably have to be drawn on a case by case basis. It is sufficient for our purposes when we conclude, as we do, that the extra-judicial statement of Sifferman here in question falls on the excludability side of that line.

In view of the foregoing conclusion (and the following conclusion) it is unnecessary to discuss the issue whether or not Sifferman was legally "unavailable."

■   Although we have concluded that the admission of the Sifferman statement was error, we also conclude that it was not prejudicial and that its admission does not constitute reversible error.

In *People* v. *Leach, supra,* 15 Cal.3d 419, the court in concluding that the erroneous admission of the extra-judicial statement there involved did not constitute prejudicial reversible error stated at page 446: "When this right to confrontation is denied, an ensuing conviction may stand only if the reviewing court is ' "able to declare a belief that it was harmless beyond a reasonable doubt." ' (*Harrington* v. *California* (1969) 395 U.S. 250, 251 [23 L.Ed.2d 284, 286, 89 S.Ct. 1726], quoting *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)"

We can conscientiously declare beyond a reasonable doubt that the admission of the Sifferman statement was harmless beyond a reasonable doubt, (*Chapman* v. *California* (1966) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]) and that the result would have been the same without it. Coble confessed to the crime within hours after its commission and apparently wholly independently and in ignorance of the fact that Sifferman made a statement or was simultaneously making a statement which incriminated Coble. Coble was positively identified by the victim (Rawles) and an independent witness (Kleier). It is true that the initial identification was not positive but that was because Coble appeared shorter (he was not then wearing shoes) he combed his hair differently and he had switched T-shirts with Sifferman. At trial the identification by both witnesses was positive and certain. Under these circumstances, the Sifferman statement was *cumulative* evidence (*Brown* v. *United States* (1973) 411 U.S. 223 [36 L.Ed.2d 208-215, 93 S.Ct. 1565]). In *Brown,* the Supreme Court said: "Upon an independent examination

of the record, we agree with the Court of Appeals that the *Bruton* errors were harmless. The testimony erroneously admitted was *merely cumulative* of other overwhelming and largely uncontroverted evidence properly before the jury. In this case, as in *Harrington v. California,* 395 U.S. 250 (1969), the independent evidence 'is so overwhelming that unless we say that no violation of *Bruton* can constitute harmless error, we must leave this . . . conviction undisturbed,' *id.,* at 254. We reject the notion that a *Bruton* error can never be harmless. '[A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials. [Citations.]" (*Id.,* at pp. 231-232 [36 L.Ed.2d at p. 215].) (Italics added.)

The Sifferman statement merely constituted a gilding of the lily. Beyond a reasonable doubt the result would have been the same if the Sifferman statement had been omitted.

The judgment is affirmed.

Gargano, Acting P. J., and Franson, J., concurred.