[No. C064913. Third Dist. Apr. 26, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE FEDERICO VASQUEZ, Defendant and Appellant.

[CERTIFIED FOR PARTIAL PUBLICATION*]

*Pursuant to California Rules of Court, rules 8.1110 and 8.1105(b), this opinion is certified for publication with the exception of parts I.B., C., and II. of the Discussion.

610

## COUNSEL

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**MURRAY, J.**—Defendant Jose Federico Vasquez accosted Wilson Rodriguz[1] with a gun, threatened to kill Rodriguz and forced Rodriguz to take off his clothes. Defendant then struck Rodriguz on the head with the gun, causing lacerations and bleeding, and took Rodriguz's clothes and other belongings.

Defendant does not dispute that he robbed, assaulted and threatened Rodriguz. His defense was that he did not use a gun in committing the crimes.

Defendant contends that the trial court erred by excluding codefendant Manuel Guerrero's out-of-court statement to the police, which defendant claims was admissible under the declaration against interest exception to the hearsay rule. In particular, defendant contends (1) the trial court erred in determining that the portions of Guerrero's statement defendant sought to introduce were not against Guerrero's penal interests, (2) exclusion of Guerrero's statement violated defendant's due process rights, and (3) the trial court erred in excluding Guerrero's statement under Evidence Code section 352. Defendant also contends that the trial court erred by failing to instruct the jury on the lesser included offense of simple assault.

In the published portion of this opinion, we hold that the trial court did not err in excluding Guerrero's statement. The statement was not admissible under the declaration against interest exception because the statement was not specifically disserving of Guerrero and because the statement lacked trustworthiness.

In the unpublished portion of this opinion, we hold that preclusion of Guerrero's statement did not violate defendant's due process rights. We also reject defendant's contention that the trial court committed instructional error by not instructing on simple assault. Moreover, even if the court had erred in not instructing on that lesser included offense, any such error here is harmless.

We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant and Guerrero were jointly charged by amended information as codefendants.

---

[1] The victim spells his name "Rodriguz."

Defendant was charged as follows: count one, second degree robbery (Pen. Code, § 211);[2] count two, assault with a firearm (§ 245, subd. (a)(2)); and count three, criminal threats (§ 422). As to counts one and two, the information alleged that defendant had personally used a firearm in the commission of the offenses. (§§ 12022.53, subd. (b), 12022.5, subd. (a).) He was also charged with a prior prison commitment enhancement. (§ 667.5, subd. (b).)

Guerrero was charged with the same offenses in counts one and two, but he was not charged with criminal threats in count three. In addition, he was charged in count four with accessory after the fact. (§ 32.) As to count one, the information alleged that Guerrero was an armed principal (§ 12022, subd. (a)(1)), and in count two, the information alleged that Guerrero personally used a firearm (§ 12022.5, subd. (a)). Guerrero was also charged with an on-bail enhancement. (§ 12022.1.) Prior to the commencement of trial, Guerrero entered a guilty plea pursuant to a negotiated agreement.[3]

A jury found defendant guilty on all counts and also found true the allegations that he personally used a firearm during the commission of counts one and two. (§§ 12022.53, subd. (b), 12022.5, subd. (a).) The trial court found the prior prison commitment allegation to be true. (§ 667.5, subd. (b).) Defendant was sentenced to a total aggregate term of 16 years in state prison.

### The Prosecution's Case

On March 2, 2009, the victim, Wilson Rodriguz, was walking alone down a street toward his mother's house in the Meadowview area of Sacramento when he noticed a black Chevrolet Malibu driving toward him. The car had silver- and black-tinted windows and red rims. The car slowed down and passed Rodriguz. Rodriguz saw two individuals in the car, a driver and a front passenger. Although he had seen the car in the neighborhood prior to March 2, 2009, Rodriguz did not know and had never previously seen the driver or the passenger.

The car made a U-turn and stopped next to Rodriguz. Rodriguz stopped in front of a green house when the car stopped, and then ran up to the front door of the green house to ask for help. Rodriguz knocked on the front door but no one answered his knock.

After the car parked on the street in front of the green house, defendant got out of the front passenger seat. Defendant then walked to the middle of the

---

[2] Undesignated statutory references are to the Penal Code.

[3] See footnote 6, *post.*

driveway, pointing something with his hand inside his coat pocket. The driver stayed in the car. Defendant wore a red peacoat and a red baseball cap that was turned sideways.

Defendant told Rodriguz "to come over here."[4] Pointing the hand in his jacket pocket at Rodriguz and threatening to shoot Rodriguz, defendant ordered Rodriguz to go to the other side of the green house. Defendant said something like, "I can taste you in my mouth" and "get on the other side before I shoot you."

Rodriguz complied with defendant's command and moved to the other side of the garage. Defendant followed, keeping his hand inside his jacket pocket and pointing what Rodriguz believed was the barrel of a gun at him.

Rodriguz testified that defendant threatened him with a gun, but Rodriguz testified inconsistently about how long the gun was out of defendant's jacket pocket. Upon questioning by the prosecution, Rodriguz testified that defendant pointed a gun straight at him and threatened to kill him while he was ordering Rodriguz to take off different articles of clothing. According to Rodriguz, defendant pulled the gun out of his pocket quickly, pointed the gun at him, and ordered him to take his clothes off.

In contrast, Rodriguz testified on cross-examination that while he was taking off his clothes, defendant kept his hand inside his jacket pocket. Rodriguz testified on recross-examination that the only time he saw the gun was when defendant hit Rodriguz on the side of the head with it. Rodriguz stated during recross-examination that after defendant hit him on the side of the head, defendant put the gun back in his pocket.

Nevertheless, Rodriguz testified that he saw a gun, not just a piece of metal. Rodriguz asserted that he had no doubt that the gun defendant used was real and not a toy gun. At one point, Rodriguz testified that the gun was made out of clay, but immediately stated, "[o]f course [the gun] was real."

---

[4] During trial, Rodriguz's competence to testify came into question. There was discussion that Rodriguz may have a mental disability. Defendant filed a motion challenging Rodriguz's competency to testify. Following an Evidence Code section 402 hearing during which Rodriguz testified, the trial court ruled that Rodriguz was competent to testify. Defendant does not challenge this ruling on appeal.

However, Rodriguz testified inconsistently about some facts during the trial. For example, Rodriguz testified on direct examination that defendant told Rodriguz "to come over here" when Rodriguz was standing at the front door of the green house. On cross-examination, Rodriguz stated that defendant told Rodriguz to "come over here" before Rodriguz ran up to the front door of the green house. Rodriguz testified that he tried to forget about what had happened to him, but that he remembered what defendant had done to him. We note inconsistencies in Rodriguz's testimony where relevant to our review.

Rodriguz explained on redirect examination that he had earlier stated the gun was made out of clay out of frustration. He testified that the gun was black and it was the same type of gun the police carry. He further testified that the gun with which he was struck was metal.

Rodriguz was fearful for his life during this episode. Defendant told him to "shut up; take your clothes off now before I kill you; I can taste you in my mouth." Rodriguz took off all of his clothes except for his tank top and socks and he removed his MP3 player, cell phone, wallet, necklace and lighter, and placed his belongings on the ground in front of defendant. Defendant struck Rodriguz with the gun behind Rodriguz's left ear, causing a cut and bleeding. Rodriguz testified that after he was struck he could not hear and the impact made him woozy. After striking Rodriguz, defendant said, "you don't know how badly I can kill you right now."

Defendant took Rodriguz's belongings and threw them into the car. Defendant then got into the passenger seat, the car made a U-turn and then drove away in the direction in which Rodriguz originally saw it driving. Rodriguz saw big red rubber testicles hanging from the back bumper of the car as it drove away. The driver of the car never got out of the car.

Rodriguz ran to the front door of the green house to ask for help again. A female occupant of the house opened the door and then shut the door in his face. Rodriguz then ran toward his mother's house. A woman picked him up and drove him there. After arriving at his mother's house, Rodriguz immediately called 911.

Rodriguz reported to the 911 operator that two 25- to 30-year-old Hispanic males in a black Malibu took his ID, credit card, boxers, pants, shoes, and phone. Rodriguz reported that the incident had just occurred and named the street on which it had happened. Rodriguz stated that a man wearing a red jacket and a red hat and who had long hair, a mustache, and "chin hair" hit Rodriguz behind the ear with a gun. Rodriguz said the man said something to him like, "You don't know how badly I want to kill you right now."

Sacramento Police Officer Christina Trujillo and her partner, Officer Griffin, responded to Rodriguz's 911 call. Trujillo and Griffin contacted Rodriguz shortly after 1:11 p.m. Trujillo determined where the robbery had occurred. Rodriguz told the officers that defendant pulled out a gun and pointed it at him.

Trujillo observed that Rodriguz was crying and shaking and saw that Rodriguz's left ear was red and swollen. He had a half-inch cut behind his left ear and four to five other lacerations on his ear. He was bleeding.

Rodriguz described the car to the officers as a black Chevrolet Malibu with silver tinting on the windows, red on the wheels, and red rubber testicles hanging from the back of the car. He told the officers that he thought the driver of the car lived on Meadowview Road and Amherst. The officers drove Rodriguz around in an attempt to locate the car but they did not find the car at that time.

Rodriguz made a second 911 call later that day to report that he had seen the car parked in front of an apartment complex on Amherst. The red testicles were still attached to the car. Rodriguz provided a description of the car and its license plate number. Sacramento Police Officer Jason Nollette responded to Rodriguz's second 911 call at 4:05 p.m. Nollette went to an·apartment complex located on Meadowview Road and found a car matching the description and license plate number given by Rodriguz. Nollette determined that the car was registered to codefendant Guerrero. Officers brought Rodriguz to the location where the car was parked. There, Rodriguz identified Guerrero's car as the car involved in the robbery.

Based on police investigation, Nollette determined that defendant was also a suspect.[5] Nollette compiled two photographic lineups, one containing a photograph of Guerrero and the second containing a photograph of defendant. Rodriguz viewed the photographic lineups at 8:10 p.m. Rodriguz identified Guerrero as the driver of the car and defendant as his assailant.

Guerrero's mother, Frances Guerrero, testified that in March 2009, her son owned a 1996 black Chevrolet Impala with red rims, tinted windows and red rubber "balls" hanging from the back of the car. She further testified that on the date of the robbery, her son left their home at 10:30 a.m. in his car, and returned around 1:45 p.m., accompanied by defendant. Consistent with Rodriguz's description, Frances Guerrero testified that defendant was wearing a red jacket and blue pants and sported a goatee and mustache. She testified that she did not see any guns.

The parties stipulated that the police arrested defendant on March 17, 2009.

### The Defense Case

Defendant called one witness at the trial, Fumi McGee. McGee is the resident of the house where Rodriguz sought help. On March 2, 2009, McGee was sitting in her living room when she looked out her front window and saw

---

[5] It appears from defendant's in limine motions that Guerrero "fingered" defendant. See footnote 8, *post*.

a young man walking up to her front door. As the young man came closer to her door, McGee saw another man walking on her driveway. The second man said something to the young man, but McGee did not hear what was said. The young man turned around and looked at the second man. McGee went up to her screen door and looked out but did not open the screen door or go outside. She then saw the two men walk toward her garage, out of her view. McGee later saw one of the men walk toward a car. She saw a dark older car with red paint on the back make a U-turn in front of her house.

McGee did not see anyone holding a gun. However, she did not look to see if the second man had anything in his hands.

After the car left, McGee saw a man walking up to her screen door. This man told McGee, "they stripped me naked, they stripped me naked." McGee responded that she could not help him and the man left. McGee did not call the police.

## DISCUSSION

### I. Admissibility of Codefendant's Statement

#### A. Declaration Against Interest

1. *Pretrial and in Limine Motions*

On September 1, 2009, defendant moved to dismiss based on a plea offer the prosecution was contemplating for Guerrero. Defendant argued that the offer would render Guerrero unavailable to testify as a witness at defendant's trial. According to defendant, Guerrero was a material witness in defendant's case because Guerrero told an arresting officer that a gun was not involved in the incident. In the alternative, defendant sought to continue his trial for 90 days so he could subpoena Guerrero to appear as a witness at trial once the time for Guerrero to file an appeal had expired. The prosecutor opposed defendant's motions.

The prosecutor filed a written in limine motion to preclude defendant from eliciting evidence of Guerrero's out-of-court statement to the police on hearsay grounds.

On September 10, 2009, Judge Elena J. Duarte heard defendant's motions to dismiss and for a continuance. Defendant's counsel emphasized that the purpose of his motions was to get Guerrero's statement to the police into evidence, either through Guerrero or the arresting officer. Specifically, defendant sought to introduce the portions of Guerrero's statement to the

police in which Guerrero stated that (1) a gun was not involved in the incident and (2) defendant punched Rodriguz on the right side of Rodriguz's face one time. The trial court heard counsel's arguments about whether the declaration against penal interest exception to the hearsay rule in Evidence Code section 1230 (section 1230) applied to Guerrero's statement to the police so that, even if Guerrero exercised his right against self-incrimination, defendant could elicit Guerrero's statement from the police officer.

A copy of the police report containing Guerrero's entire statement was provided to and reviewed by Judge Duarte, but only after the judge requested to see it. The prosecutor indicated the statement was about a page and a half in length. Defendant did not attach a copy of the statement to his moving papers or otherwise request that the copy reviewed by the court be made part of the record.

After reviewing the report, the trial court stated, "[I]t appears that Mr. Guerrero was actually told that it was an armed robbery. I don't know if he was told there was a gun involved allegedly, but he was certainly told by the officer there was an armed robbery that he was suspected in. And at that point, he says, there was never a gun involved, after he says a number of other things, which placed him at the scene, but which really put the majority of the onus of the bad behavior obviously on [defendant]." Ultimately, the trial court found that the portions of the statement defendant sought to admit were not against Guerrero's penal interest and the circumstances surrounding Guerrero's statement rendered it unreliable. Specifically, the trial court found that, considered in its entirety, Guerrero's statement to the police attempted to minimize the crime as one not involving a gun and to shift blame on defendant. The trial court ruled that Guerrero's entire statement to the police was not admissible under Evidence Code section 1230.

Thereafter, on that same day, Guerrero entered a plea to the negotiated resolution. Judge Duarte accepted his plea and vacated the jury trial as to Guerrero.[6] Later, Judge Duarte denied defendant's motion to dismiss, but granted defendant's motion to continue. However, instead of continuing the trial 90 days as requested by defendant, the court continued the matter to a date shortly after the date set for Guerrero's sentencing. The case was later reassigned to Judge Benjamin Davidian for trial.

---

[6] In a separate pending case, Guerrero pled no contest to vehicular manslaughter (§ 192, subd. (c)(1)), a felony strike offense, in exchange for a sentence of one year in jail and five years of formal probation. In the present case, he pled no contest to accessory after the fact to robbery and assault with a firearm (§ 32) in exchange for a sentence of one year in jail, with the sentences to run concurrently. The prosecutor represented that Guerrero and the victim in the vehicular manslaughter case were acquaintances and that the family of the victim wanted Guerrero to have a chance at probation.

On October 27, 2009, as part of the rulings on the motions in limine, Judge Davidian reheard argument on the admissibility of Guerrero's statement under Evidence Code section 1230. Guerrero was sworn in as a witness and exercised his right against self-incrimination. Guerrero's counsel informed the trial court that Guerrero would continue to invoke his right against self-incrimination until his right to appeal had been exhausted and that he intended to file an appeal.

Defendant again asked the trial court to allow admission of two portions of Guerrero's out-of-court statement to the police. In particular, defendant sought a ruling that the following portions of Guerrero's statement were declarations against penal interest under Evidence Code section 1230: (1) a gun was not involved and (2) defendant punched Rodriguz one time on the right side of Rodriguz's face. Judge Davidian requested and reviewed a copy of the police report. Again, the defense did not request that a copy of the report be made part of the record.

After hearing argument on the issue, Judge Davidian ruled that both portions of Guerrero's statement were hearsay and not admissible as declarations against penal interest under Evidence Code section 1230. The trial court reasoned that Guerrero's statement that a gun was not involved was not a statement against penal interest, but rather, it was a statement in Guerrero's defense—a "statement in [Guerrero's] interest . . . because it takes him off the hook for any number of possible crimes including Federal gun charges." The trial court went on to rule that Guerrero's statement, "quote, that is when [defendant] punched the guy one time on the right side of his face, end quote," was also not against Guerrero's penal interest. As a separate ground, the court ruled that the two portions of the statement defendant sought to admit should be precluded under Evidence Code section 352 because they were not probative and would tend to confuse the jurors.

2.   *Analysis*

■  Defendant contends that Guerrero's "confession" is admissible as a declaration against penal interest under Evidence Code section 1230. Section 1230 provides in pertinent part: "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, . . . so far subjected him to the risk of . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." To establish admissibility under this exception, the proponent has the burden of showing (1) the declarant is

unavailable,[7] (2) the declaration was against the declarant's penal interest when made, and (3) the declaration was sufficiently reliable to warrant admission despite its hearsay character. (*People v. Geier* (2007) 41 Cal.4th 555, 584 [61 Cal.Rptr.3d 580, 161 P.3d 104] (*Geier*); *Duarte, supra*, 24 Cal.4th at pp. 610–611; *Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 170 [80 Cal.Rptr.3d 812] (*Clark*).)

We review a trial court's decision about whether a statement is admissible as a declaration against penal interests for abuse of discretion. (*People v. Lawley* (2002) 27 Cal.4th 102, 153–154 [115 Cal.Rptr.2d 614, 38 P.3d 461] (*Lawley*); *People v. Gordon* (1990) 50 Cal.3d 1223, 1250–1251 [270 Cal.Rptr. 451, 792 P.2d 251] (*Gordon*), disapproved on another ground in *People v. Edwards* (1991) 54 Cal.3d 787, 835 [1 Cal.Rptr.2d 696, 819 P.2d 436].) Thus, the trial court's decision " ' "will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*Geier, supra*, 41 Cal.4th at p. 585.)

The question of " 'whether a statement is self-inculpatory or not can only be determined by viewing it in context.' " (*Duarte, supra*, 24 Cal.4th at p. 612, quoting *Williamson v. United States* (1994) 512 U.S. 594, 603 [129 L.Ed.2d 476, 114 S.Ct. 2431] (*Williamson*).) And to determine whether the statement is trustworthy, the trial court " ' "may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant." ' " (*Duarte, supra*, at p. 614.) As we have noted, the defense did not attach to its written motions a copy of the police report containing Guerrero's statement. Nor did the defense read the entire statement into the record or ask the court to make the report part of the record or call the arresting officer to testify in the in limine motion hearing. Consequently, the failure to introduce evidence by the arresting officer concerning the totality of the circumstances under which Guerrero's statement was made has limited our contextual review of the trial court's ruling to the uncontroverted written and oral statements made by the parties concerning the statement and the oral statements of the two judges concerning the contents of the police report.[8]

---

[7] The parties do not dispute Guerrero's unavailability. Because Guerrero exercised his Fifth Amendment right not to incriminate himself, Guerrero was unavailable as a witness. (*People v. Duarte* (2000) 24 Cal.4th 603, 609 [101 Cal.Rptr.2d 701, 12 P.3d 1110] (*Duarte*).)

[8] We note that, as the proponent of the evidence, defendant could have attached the police report containing Guerrero's statement as an exhibit to his written motions or cited it verbatim therein. The report was not attached to his motion to dismiss or to his two continuance motions, wherein he sought to establish the materiality of Guerrero's expected testimony. We acknowledge there may have been a tactical reason why counsel wanted the trial court to focus on and consider only the two statements the defense sought to introduce. On the other hand, we also observe that the prosecution sought to preclude the statements, but also did not attach

### a. *Against penal interest*

■ Only statements that are specifically disserving to the hearsay de-clarant's penal interests are admissible as statements against penal interests. (*Lawley, supra,* 27 Cal.4th at p. 153; *Duarte, supra,* 24 Cal.4th at p. 612; *Clark, supra,* 165 Cal.App.4th at p. 170.) Self-serving and collateral state-ments are not against one's penal interest, and therefore are not admissible. (*Duarte, supra,* 24 Cal.4th at pp. 611, 612; *Clark, supra,* 165 Cal.App.4th at pp. 171–173.) Moreover, "[e]ven a hearsay statement that is facially inculpa-tory of the declarant may, when considered in context, *also* be exculpatory or have a net exculpatory effect," and thus not be admissible as a declaration against interest. (*Duarte, supra,* 24 Cal.4th at p. 612.) "The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature." (*Williamson, supra,* 512 U.S. at pp. 599–601; see *id.* at pp. 599–601 [holding that the declaration against interest in Fed. Rules Evid., rule 804(b)(3), 28 U.S.C. requires preclusion of statements that are "non-self-inculpatory," even if they are made within broader narrative that is generally self-inculpatory].)

In *Duarte,* the defendant was charged with shooting at an inhabited dwelling. An occupant was struck by the gunfire. In a statement to the police following his arrest, a codefendant admitted his participation but stated that the wrong house had been shot, he "did the shooting 'in retaliation for an earlier shooting,' " and he deliberately " 'shot high' " because he did not want to kill or hurt anyone. (*Duarte, supra,* 24 Cal.4th at pp. 612–613; see *id.* at pp. 611–613.) The codefendant implicated the defendant in the shooting. (*Id.* at p. 608.) The defendant and the codefendant were tried separately. (*Ibid.*) The trial court permitted the prosecution to introduce a redacted version of the codefendant's postarrest statement to the police under Evidence Code section 1230. Our high court observed that although the redacted statement of the codefendant implicated him in the crime, it retained a number of statements that served the codefendant's interests by casting him in a sympathetic light and suggesting that the other shooters, including the defendant, were responsible for injuring the victim. (24 Cal.4th at pp. 612–613, 615, 616.) The court held that because the net effect of the codefendant's redacted statement did not specifically disserve the codefend-ant's penal interests, such statement was not admissible under Evidence Code section 1230. (24 Cal.4th at p. 613.)

---

a copy of the report to their in limine motions. There is no prohibition against doing so. (§ 1204.5, subd. (a) [trial court may consider police report provided with defendant's consent or in connection with "the hearing of any law and motion matter"]; *Breedlove v. Municipal Court* (1994) 27 Cal.App.4th 60, 63 [32 Cal.Rptr.2d 400]; *People v. Brown* (2001) 96 Cal.App.4th Supp. 1, 37–38 [117 Cal.Rptr.2d 738].)

In *Lawley*, the defense sought to introduce statements made by one Seabourn to a prison cellmate in which Seabourn admitted that he had killed a man in Modesto, that he had been hired to commit the murder by the Aryan Brotherhood for $6,000, and that an innocent person was incarcerated for it. (*Lawley, supra*, 27 Cal.4th at pp. 151–152.) The trial court ruled that the nondisserving parts of the statement were inadmissible, disallowing the part of the statement indicating that Seabourn had been hired by the Aryan Brotherhood and that an innocent person had been incarcerated. Our high court held that the trial court did not abuse its discretion in excluding those portions of Seabourn's statement as they were not specifically disserving of Seabourn's interest. (*Id.* at p. 154.) "[N]othing about *who* hired Seabourn [to commit the murder] made Seabourn more culpable than did the other portions of his statement." (*Ibid.*) Nor did the opinion that an innocent man was in jail qualify as a statement against his interests. (*Ibid.*)

Here, the two parts of Guerrero's statement defendant sought to introduce—that a gun was not involved, and that defendant punched the victim on the side of the head—were not specifically disserving to Guerrero. Those parts of the statement spoke to defendant's culpability, not Guerrero's.

In addition, the portions of the statement defendant sought to introduce tended to minimize Guerrero's culpability, because if a gun had been used during the incident, the crime would be viewed as more serious and Guerrero would have been exposed to an aggravated sentence and enhanced penalties. (§ 12022, subd. (a)(1); Cal. Rules of Court, rule 4.421(a)(1) [crime involving great violence is an aggravating circumstance].)

b. *Trustworthiness*

Even when a hearsay statement is specifically disserving, and thus against the declarant's penal interest, the statement may, in light of circumstances, lack sufficient indicia of trustworthiness to qualify for admission. (*Geier, supra*, 41 Cal.4th at p. 584; *Duarte, supra*, 24 Cal.4th at p. 614.) Indeed, it has been said that the focus of the Evidence Code section 1230 exception is the trustworthiness of the declaration. (*Geier, supra*, 41 Cal.4th at p. 584; *Gordon, supra*, 50 Cal.3d at p. 1251.)

"The decision whether trustworthiness is present requires the court to apply to the peculiar facts of the individual case a broad and deep acquaintance with the ways human beings actually conduct themselves in the circumstances material under the exception." (*Gordon, supra*, 50 Cal.3d at p. 1251; accord, *Geier, supra*, 41 Cal.4th at p. 584; *Duarte, supra*, 24 Cal.4th at p. 614.) And, as we have noted, the trial court must consider the totality of the circumstances in which the declaration was made, the words uttered, and

the declarant's possible motivation and relationship to the defendant. (*Geier, supra*, 41 Cal.4th at p. 584; *Duarte, supra*, 24 Cal.4th at p. 614.)

In *Duarte*, unlike here, the entire statement made by the codefendant was in the appellate record. Examining the entire unredacted version of the codefendant's hearsay declaration, our high court found that the codefendant's statements attempted to shift blame or curry favor with the authorities. (*Duarte, supra*, 24 Cal.4th at p. 615 & fn. 3, p. 616.) In determining the declaration lacked trustworthiness, the court noted that the declaration was made shortly after the codefendant had been arrested and taken into custody. (*Id.* at p. 617.) The court observed that " '[i]nformation received from sources who are themselves the focus of pending criminal charges or investigations is inherently suspect.' " (*Ibid.*) The court further observed that the declarant knew that physical evidence linking him to the crime was discovered during a search of his residence. (*Ibid.*) "Under these circumstances, [the declarant] may have believed that the police had sufficient evidence to link him to the crimes, and that he had little to lose and perhaps something to gain by admitting his role while attempting to minimize his participation and shift primary responsibility to others." (*Ibid.*) The court concluded that the declarant's statement lacked sufficient indicia of trustworthiness to qualify for admission under Evidence Code section 1230. (*Duarte, supra*, at p. 618.)

Here, as we have noted, Guerrero's entire statement is not part of the record on appeal. Nor was there testimony concerning the circumstances under which the statement was made. However, both Judge Duarte and Judge Davidian reviewed the police report containing Guerrero's statement. Counsel also made uncontradicted written and oral comments, apparently based on the report, that provide us with some contextual information.

Commenting on the context in which the statement was made, Judge Duarte noted at the September 10, 2009 hearing that it was only after a police officer told Guerrero he was a suspect in an armed robbery that Guerrero "started talking and indicated at some point while he was talking, there was never a gun involved." Apparently referencing what the officer told Guerrero during the interrogation, defense counsel told the court that the officer said, "All I have is your car was [*sic*] being identified as being involved in an armed robbery." Defense counsel argued that anything Guerrero said after he was confronted with that information implicated him in the robbery. Judge Duarte disagreed, finding that Guerrero's statement "put the majority of the onus and the bad behavior" on defendant. Judge Duarte asked for any other information given to Guerrero during the police interrogation and, despite the fact that the defendant, as the proponent of the statement, has the burden of establishing its trustworthiness (*Duarte, supra*, 24 Cal.4th at pp. 610–611), no other information was offered by defendant to the trial court.

At the November 2, 2009 hearing at which Judge Davidian revisited the Evidence Code section 1230 issue, the prosecutor stated that Guerrero's statement was given to the police "under *Miranda* not to [*sic*] long after the crime was committed." This assertion was not contradicted by the defense. Defendant's counsel noted that the portions of Guerrero's statement defendant sought to introduce were made after an officer asked Guerrero, "why is your car being identified as being involved in an armed robbery?" No further facts concerning the circumstances under which Guerrero's statement was made were proffered to the trial court by the defense at the November 2 hearing.

Based on the statements by court and counsel, it seems clear that Guerrero made the portions of the statement defendant sought to introduce during a police interrogation, after Guerrero had been arrested, *Mirandized* and confronted with the fact that the police were investigating an "armed robbery" and the fact that his distinctively adorned vehicle had been involved in that robbery. In finding the two portions of Guerrero's statement inadmissible, Judge Davidian specifically noted the circumstance that those statements were made during a police interrogation. The usual motive to minimize responsibility and curry favor appears to have been in full effect here.

Defendant failed to satisfy his burden of showing that the portions of Guerrero's statement he sought to introduce were specifically disserving to Guerrero's penal interests and were trustworthy. The trial court did not abuse its discretion in excluding those statements.

c.  *Defendant's Contentions*

Defendant now complains that the trial court should have admitted Guerrero's entire statement to the police instead of "parsing" the statement. Defendant contends that Guerrero's "admission of participation in the robbery was [an] integral part of his statement that a gun was not used." Defendant's complaint that the trial court precluded Guerrero's entire statement to the police is at odds with the record.

First, there is no information in the record that supports the assertion that Guerrero's statement included an admission that he "participated in the robbery" or, as defendant now also asserts, that Guerrero "implicated himself completely in the robbery."[9] To the contrary, at the November 2, 2009

---

[9] In his appellate briefing, defendant repeatedly asserts that Guerrero admitted participation in the robbery. Yet, he references nothing in the record to substantiate this assertion. In his motion to dismiss, the only reference defendant made to Guerrero's description of his involvement was: "After his arrest the co-defendant made a statement to the arresting officer in which he not only implicates defendant Vasquez, but give [*sic*] a detailed description as to

hearing, after reading the police report containing Guerrero's statement, Judge Davidian observed, "Yeah, but he's not admitting to much of anything. He is saying [defendant] did everything." Defense counsel responded, "[T]he only thing that is incriminating as to Mr. Guerrero is that he was there, he witnessed what [defendant] did, and he still gave him a ride home." Earlier, defense counsel told the court, "None of the evidence in this case is going to indicate that Mr. Guerrero did anything. In fact, his entire involvement in this case is he's there, and he gave [defendant] a ride home. It was [defendant] who's alleged to have jumped out of car [sic] and who had punched, as Mr. Guerrero said, punched the . . . victim and take [sic] his property." From the record before us, it appears that neither the court nor defense counsel read Guerrero's statement as admitting participation in a robbery.[10] Rather it was the defense contention that Guerrero's statement suggested liability as an accessory after the fact.

Second, while defendant now contends the court artificially "parsed" Guerrero's statement, the record reflects it was actually the defense that "parsed" the statement. Defendant requested that the court allow just two parts of the statement: (1) that a gun was not involved and (2) that defendant punched the victim on the side of the head. When Judge Davidian ruled, he confirmed that these were the only statements defendant wanted admitted.[11] The trial court understandably focused on the parts of the statement defendant sought to introduce and did not abuse its discretion in doing so.

In his reply brief, relying for the first time on *People v. Samuels* (2005) 36 Cal.4th 96 [30 Cal.Rptr.3d 105, 113 P.3d 1125] (*Samuels*) and *People v. Wilson* (1993) 17 Cal.App.4th 271 [21 Cal.Rptr.2d 420] (*Wilson*), defendant asserts that the excluded portions of Guerrero's statement were inextricably tied to and part of a specific statement against penal interests. Defendant's reliance on *Samuels* and *Wilson* is misplaced.

what occurred including indicating that a gun was not involved." The detailed description of "what occurred" was not set forth in the motion. In his continuance motions, defendant merely referred to Guerrero as a "key witness," without describing Guerrero's conduct and asserted that at some point Guerrero had been willing to testify that defendant was not armed during the robbery. In his motions in limine, defendant stated: "Guerrero is arrested first and gives a statement to the police. In it he implicates Vasquez and says that Rodriguz [sic] asked Vasquez, 'is this about your grandmother's house?' and further states that there was no gun involved in the incident." Based on the record before us, these proffers represent the totality of what defendant said in his written motions concerning statements Guerrero made describing Guerrero's own involvement.

[10] We note that neither the parties nor the court indicated that the report said Guerrero knew defendant was going to rob Rodriguz when he got out of the car.

[11] When Judge Davidian ruled that the two portions of Guerrero's statement were hearsay, he stated: "Now, those are two statements the Defense wished to get in from this witness statement that was given by Manuel Guerrero. I understand those are the only two [statements] you were trying to get in; is that right, sir?" Defense counsel replied: "That is correct."

In *Samuels,* our high court held that the trial court did not abuse its discretion when it allowed the prosecution to introduce as declarations against penal interests the entirety of statements made by the declarant in which the declarant said the defendant paid him to kill the victim. (*Samuels, supra,* 36 Cal.4th at p. 120.) The court reasoned that the declarant's statements were "facially incriminating" and "in no way exculpatory, self-serving, or collateral" (*ibid.*), and the references to the defendant were "inextricably tied to and part of a specific statement against [the declarant's] penal interest" (*id.* at p. 121).

Here, unlike in *Samuels,* the portions of the declarant's statement defendant sought to introduce were not *facially incriminating.* Indeed, defendant attempted to establish the potentially incriminating nature of the portion of the statement he sought to introduce by referencing parts of the statement he did not seek to introduce—namely the part of the statement in which Guerrero acknowledged that he was present at the scene and drove defendant away. Then defendant essentially self-redacted or "parsed" those parts of the statement that may have been specifically disserving and instead sought to introduce nondisserving portions of the statement. *Samuels* does not help defendant here.

In *Wilson,* the defendant was charged with a shooting. The defendant's wife told the police that the defendant called her from the jail, told her where to find the gun and gave her instructions on how to dispose of it. She told the police she did as the defendant directed. (*Wilson, supra,* 17 Cal.App.4th at p. 274.) When the prosecution called the wife to testify at her husband's trial, she invoked the marital privilege. (*Ibid.*) The prosecution was permitted to introduce the statements the wife made to the police as declarations against interest on the theory that the statements exposed her to liability as an accessory after the fact. (*Id.* at p. 275.) On appeal, the defendant contended the statements were not specifically disserving to the wife. The appellate court noted that the justification for the requirement that statements be specifically disserving "is that a 'declarant is in a trustworthy frame of mind when he makes a declaration against interest . . . . But when a self-serving statement is made along with a disserving one, it may well be doubted that the declarant is in a trustworthy frame of mind when he makes the self-serving statement.' " (*Wilson, supra,* at p. 276.) The court then noted that "[a]ccessory liability attaches only to a person who acts with knowledge that a principal has committed or been charged with the commission of a felony" (*ibid.*), and reasoned that the defendant's statements to his wife established her knowledge that the defendant had committed the shooting. Thus, the entire statement the wife made to the police was disserving of her penal interests. Under the circumstances, the fact that the statement was also disserving to the defendant did not render the statement unreliable and inadmissible. (*Ibid.*)

*Wilson* does not help defendant. The present case is much more like a case *Wilson* distinguished, *People v. Coble* (1976) 65 Cal.App.3d 187 [135 Cal.Rptr. 199] (*Coble*), disapproved on another ground in *People v. Fuentes* (1998) 61 Cal.App.4th 956, 967 [72 Cal.Rptr.2d 237] (*Fuentes*). In *Coble*, the trial court allowed the prosecution to introduce a statement made by the declarant to a sheriff's deputy. The declarant was characterized as "a possible coconspirator, accomplice, or aider and abetter" in the robbery with which the defendant was charged. (*Coble, supra,* 65 Cal.App.3d at p. 190.) In his statement, the declarant said he drove the defendant to a market where the defendant got out of the car, entered the store, came running out in a few minutes, and said, " '[L]et's get the hell out of here, I just pulled a robbery.' " (*Ibid.*) The declarant said he knew that the defendant had a gun in his possession before the robbery and that there had been some talk about " 'pulling a robbery,' " but it really wasn't serious talk, only " 'bull shit.' " (*Ibid.*) The declarant's statement to the deputy ended with " 'I didn't do it. That's it.' " (*Id.* at p. 191.) The court concluded the declarant's statement, insofar as it implicated the defendant, was not against the declarant's penal interest. (*Id.* at p. 192.) The appellate court further noted that indicia of reliability are lacking where the declarant makes an exculpatory statement to law enforcement authorities after the declarant has been arrested for the offense. (*Ibid.*)

*Wilson* reasoned that *Coble* was of no help to the defendant in *Wilson* because the wife was not involved in the crimes committed by the defendant, her statement was not exculpatory in any part, and her statement, insofar as it implicated the defendant, was also a statement against her penal interest. (*Wilson, supra,* 17 Cal.App.4th at p. 277.)

Here, unlike the wife in *Wilson,* and more like the declarant in *Coble,* Guerrero was involved to the extent that he was present when the crime was committed and had a motive to deflect blame. And, as we have noted, the portions of Guerrero's statement—that a gun was not used and that defendant punched the victim—were not disserving of Guerrero. Those portions of the statement spoke to defendant's culpability. Indeed, as in *Lawley,* where our high court reasoned there was nothing about who hired the declarant to commit the murder that made him any more culpable in the circumstances of that case than did the other portions of his statement (*Lawley, supra,* 27 Cal.4th at p. 154), here, there was nothing about whether a gun was or was not used that made Guerrero any more liable as an accessory after the fact. If Guerrero said he was present, saw what happened and drove defendant away from the scene thereafter, those portions of his statement would have been disserving of his penal interests. If Guerrero said that he knew defendant was going to rob Rodriguz when defendant got out of the car (there is no such evidence in the record), that too would have been against his penal interests, subjecting him to liability as a potential aider and abettor to the robbery. The

trial court was not asked to allow any such statements, however. And we cannot say that the trial court abused its discretion in precluding those portions of Guerrero's statement that were not specifically disserving to Guerrero about what defendant did or did not do, especially when the circumstances under which they were made suggested Guerrero had little to lose and perhaps something to gain by admitting his presence while attempting to minimize the nature of the crime.

Defendant on appeal also advances a unique theory not raised in the trial court and not supported by any authorities. He contends that the well-settled rule requiring a statement to be specifically disserving and trustworthy to qualify for admission as a declaration against interest does not apply when a criminal defendant is the proponent of the statement because the defendant's confrontation rights are not implicated. This argument is forfeited because defendant did not raise this ground for admissibility in the trial court. (*People v. Fauber* (1992) 2 Cal.4th 792, 854 [9 Cal.Rptr.2d 24, 831 P.2d 249].) Even if it were not forfeited, the argument fails on the merits.

In support of this theory, defendant relies on *People v. Leach* (1975) 15 Cal.3d 419 [124 Cal.Rptr. 752, 541 P.2d 296], one of California's seminal cases concerning declarations against penal interests. In *Leach*, the prosecution was allowed to introduce codefendants' statements against each other in a joint trial as declarations against penal interest. Defendant asserts that our high court narrowly construed Evidence Code section 1230 in *Leach* to require statements to be specifically disserving only when offered against a defendant. Defendant bases this argument on our high court's observation, "it is precisely the purpose of the Constitution—and, we might add, the hearsay rule—to 'protect defendants from statements of unreasonable men if there is to be no opportunity for cross-examination.' " (*Leach, supra,* 15 Cal.3d at p. 441.) Yet, as defendant acknowledges, the court also wrote in *Leach,* "In the *absence of any legislative declaration* to the contrary, we construe the exception to the hearsay rule relating to evidence of declarations against interest set forth in section 1230 of the Evidence Code to be inapplicable to evidence of any statement or portion of a statement not itself specifically disserving to the interests of the declarant." (*Leach, supra,* 15 Cal.3d at p. 441, italics added.) Had the requirement that statements be specifically disserving been based on a constitutional imperative, the court would not have indicated a willingness to defer to legislative direction.

Defendant also relies on *Duarte* to support his unique theory. Yet, our high court in *Duarte* specifically declined to reach the constitutional objection (*Duarte, supra,* 24 Cal.4th at p. 610), and based its holding solely on state evidentiary law (*id.* at p. 618). As a backdrop for its analysis, the court in *Duarte* emphasized the underlying rationale for the hearsay rule. " 'The chief

reasons for this general rule of inadmissibility are that the statements are not made under oath, the adverse party has no opportunity to cross-examine the declarant, and the jury cannot observe the declarant's demeanor while making the statements.' " (*Duarte, supra,* 24 Cal.4th at p. 610.) Because the rule excluding hearsay is based on these reasons, the focus of the rule's exceptions is on the reliability of the out-of-court declaration. (*People v. Cudjo* (1993) 6 Cal.4th 585, 608 [25 Cal.Rptr.2d 390, 863 P.2d 635] (*Cudjo*); see also *Fuentes, supra,* 61 Cal.App.4th at p. 961 [exceptions to the hearsay rule generally require a high degree of trustworthiness].) "Thus, the various hearsay exceptions generally reflect situations in which circumstances affording some assurance of trustworthiness compensate for the absence of the oath, cross-examination, and jury observation." (*Cudjo, supra,* 6 Cal.4th at p. 608.) The reasons underlying the hearsay rule and the rule's exceptions apply regardless of whether the statement is offered by or against a criminal defendant.

In his opening brief, defendant discusses only one California case in which a criminal defendant's attempt to introduce a purported declaration against interest was rejected based on the application of the now well-settled requirements that the statement must be disserving and otherwise trustworthy. In *People v. Dixon* (2007) 153 Cal.App.4th 985 [63 Cal.Rptr.3d 637], the trial court found that parts of the statement offered by the defendant were admissible as statements against the codefendant's penal interest and ruled that those parts were admissible. But it ordered redaction of those portions that were not specifically disserving of the codefendant's penal interest, including the statements indicating that the defendant was not involved in the crime. The appellate court affirmed the trial court's preclusion of the statements exculpating defendant as nondisserving of the declarant and lacking reliability. (*Dixon, supra,* 153 Cal.App.4th at pp. 996–997, 1000.)

Defendant contends that *Dixon* should not be followed because it failed to distinguish between situations in which the prosecution offered the statement and those in which the defense sought to introduce the statement. Defendant ignores other cases in which the declaration against penal interest requirements were applied in the same context as in *Dixon* and in the present case, and he apparently would have us do the same. We decline to do so.

■ In both *Geier* and *Lawley,* our Supreme Court applied the requirements that statements be both disserving to the declarant and trustworthy, even though a criminal defendant was the proponent of the statements. As we have noted, in *Lawley,* the court concluded that the trial court did not abuse its discretion in precluding nondisserving statements. (*Lawley, supra,*

27 Cal.4th at pp. 153–154.)[12] In *Geier*, the court affirmed the preclusion of a statement on the grounds that it was not trustworthy. (*Geier, supra,* 41 Cal.4th at pp. 584–585.) In *People v. Butler* (2009) 46 Cal.4th 847, 865–867 [95 Cal.Rptr.3d 376, 209 P.3d 596] (*Butler*), our high court upheld the preclusion of a codefendant's statement offered by the defendant on the grounds that the statement was self-serving and lacked trustworthiness. There are many more criminal cases in which appellate courts have addressed declarations against interest offered by criminal defendants without recognizing the theory advanced by defendant.[13] In *Clark*, the requirements that the statements be disserving and trustworthy were applied in a civil case. (*Clark, supra,* 165 Cal.App.4th at pp. 155, 170–172 [in an action for toxic contamination of water, statements made by tipster to regional water board were not admissible as statements against penal interests because the statements were not specifically disserving and did not bear indicia of reliability].) The requirements that statements be specifically disserving and trustworthy to qualify as declarations against penal interests are obviously not tethered to a criminal defendant's confrontation clause rights.

■ Defendant also criticizes the trial court for finding that Guerrero's claim that no gun was used was self-serving. He contends that just because Guerrero's statement did not comport with the victim's testimony that defendant was armed with a gun does not make the statement self-serving or unreliable. The trial court had the benefit of reviewing Guerrero's entire one-and-one-half page statement. We have not found, and based on the record before us, we cannot find, that the trial court abused its discretion in making this determination. The record before us establishes the portion of Guerrero's statement defendant sought to admit was either exculpatory or had a "net

---

[12] Despite the fact that *Lawley* was referenced at the hearings before both judges, defendant did not discuss *Lawley* in his opening brief. In his reply brief, defendant cites *Samuels, supra,* 36 Cal.4th 96, for the proposition that *Lawley* is limited to facts where the declarant's statements are exculpatory, self-serving, or collateral. Defendant cites the page at which the court reasoned that the declarant's statement in *Samuels* was not "exculpatory, self-serving, or collateral" but rather were "specifically disserving" to the declarant's interest. (*Samuels, supra,* at pp. 120–121.) We need not discuss *Samuels* further or how and why it distinguished *Lawley*. Suffice it to say that *Samuels* does not support defendant's contention that courts should not require statements to be specifically disserving and trustworthy when a criminal defendant seeks to introduce those statements as declarations against interest.

[13] See *Cudjo, supra,* 6 Cal.4th at pages 604–608 (trial court erred in excluding declarant's statement offered by the defense under Evid. Code, § 1230 because statement was against declarant's interest and reliable); *People v. Frierson* (1991) 53 Cal.3d 730, 744–746 [280 Cal.Rptr. 440, 808 P.2d 1197] (upheld exclusion of evidence offered by defense under Evid. Code, § 1230 because declarant's statement was not trustworthy [habeas corpus granted on other grounds in *Frierson v. Woodford* (9th Cir. 2006) 463 F.3d 982]); *People v. Chapman* (1975) 50 Cal.App.3d 872, 880 [123 Cal.Rptr. 862] (upheld exclusion of evidence offered by defendant under Evid. Code, § 1230 as not "distinctly against" declarant's interest and/or not trustworthy—trustworthiness is a preliminary fact to be determined by the trial judge pursuant to Evid. Code, § 405); see also *Chapman, supra,* at pages 878–881.

exculpatory effect." (*Duarte, supra*, 24 Cal.4th at p. 612.) Furthermore, even if the statement was disserving, the court acted well within its discretion in excluding it because it lacked reliability given the circumstances under which it was made and Guerrero's possible motive and association with defendant.

### B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II.   Jury Instruction on Lesser Included Offense*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Raye, P. J., and Butz, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 18, 2012, S202802.

---

*See footnote, *ante*, page 609.